**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

```
In re:                         )
                               )
FRANK JAMES PALMER,            )  Case No. 23-20165-C-7
                               )
                Debtor.        )
_____)
                               )
DARLEEN PATRICK,               )  Adversary No. 23-02035-C
                               )
                Plaintiff,     )
v.                             )
                               )
FRANK JAMES PALMER,            )
                               )
                Defendant.     )
_____)
```

**MEMORANDUM DECISION**

    In the trial of this adversary proceeding, the Plaintiff, having bungled her case for nondischargeability under 11 U.S.C. § 523(a)(6) by omitting key evidence from the case in chief, lost on a failure of proof of the essential element of malice, obtained new counsel, and wants to try again.

    Evidentiary materials regarding the previously-omitted state court trial record have now been proffered to this court for the first time in connection with Plaintiff's Rule 59 motion for new trial or to alter the judgment discharging a $47 million judgment. Those materials cast sufficient new light on the state court trial record as to warrant reopening for further evidence probative of the essential element of malice.

    Although this court will entertain further evidence in a rescheduled hearing, some of the arguments made in support of the motion can be rejected now so as to be able to keep the focus on the missing proof of § 523(a)(6) malice.

I

<u>Difficulty of the Situation</u>

By any measure, this case involves tragedy for an entire family.

To be clear from the outset, this court condemns and in no way condones the course of conduct alleged in the civil action.

The case involved intra-family torts committed more than 50 years ago when the Defendant was age 14-17 (or possibly 14-21). Defendant's conduct occurred when he was a teenager originally assigned at age 14 to baby-sit his younger niece, the Plaintiff. The conduct apparently ceased when the Plaintiff's mother and grandmother (Defendant's sister and mother) discovered it and forbade it. The mother and grandmother are deceased, hence unavailable as witnesses.

In her testimony presented in this court as part of Plaintiff's case in chief at the § 523(a)(6) trial, the Plaintiff volunteered under oath "this has never been about the money." She explained how she felt the family had taken sides against her because the Defendant tortfeasor was perceived as a "good man." This testimony suggested that vindication within the family was her key value.

Yet, this Rule 59 motion by Plaintiff is all about the money.

Ironically, there probably is no money to be had. The record of the parent Bankruptcy Case indicates that the financial resources of the Defendant, a septuagenarian social security pensioner (about $16,000/yr) and Senior Pastor of the Woodbridge (CA) Missionary Baptist Church (about $27,000/yr), are probably

entirely exempt from collection under California judgment enforcement law.

Any victory for Plaintiff on the discharge question in the reopened case is likely to be pyrrhic. The main utility of this case outside the family is, regardless of the outcome, its potential impact on other sex-abuse cases pending in California courts because it provides a measure of how California juries may react in such cases.

## II
## The State Court Trial

The $47 million judgment debt in question was obtained by way of a jury verdict rendered after trial in the Superior Court of the County of San Joaquin, California in Case No. STK-CV-UPI-2021-0000198. The case was filed after California revoked its statute of limitations regarding the alleged offenses.

The Defendant was determined to be liable for Sexual Battery and Intentional Infliction of Emotional Distress. The damages award was $47,000,700.00, consisting of: Past Economic Loss ($7,500.00); Future Economic Loss ($343,200.00); Past-non-economic loss ($30,400,000.00); and Future non-economic loss ($16,250,000.00).

Because the Plaintiff withdrew her request for punitive damages, the state trial court granted a motion in limine to exclude evidence of the Defendant's financial condition.

Correlatively, another consequence of Plaintiff's withdrawal of the punitive damages request was that the issue of malice became irrelevant. Accordingly, the jury was not instructed on,

3

and did not determine, the malice that California law requires for punitive damage awards.

It could be that withdrawal of the punitive damages request was a deliberate strategy calculated to avoid focusing the jury's attention on the difficult question of malice, which could have yielded different awards of actual damages.

The absence of an appeal means there never will be a determination whether $46,650,000.00 in non-economic loss was influenced by a de facto punitive animus in the jury. Nevertheless, Plaintiff's assertion that the non-economic loss had zero punitive animus is not particularly persuasive.

### III
### 11 U.S.C. § 523(a)(6) Malice

Excepting a debt from discharge under § 523(a)(6) requires proof by preponderance of evidence of conduct that is both "willful" and "malicious."

The willful element was easily established and was not contested.

The element of malice was different. Usually, awards made after trial in a nonbankruptcy court are supported by records containing evidence probative of malice or fact-finding determining the existence of malice under applicable nonbankruptcy law in a manner that would enable a bankruptcy court to infer malice from circumstantial evidence.

Such a determination under nonbankruptcy law is helpful in a subsequent nondischargeability action, but is not necessarily dispositive of malice for purposes of § 523(a)(6).

Rather, § 523(a)(6) malice is a concept of federal law about which there has been robust caselaw development teaching that the elements of willfulness and maliciousness must be analyzed separately in a hard-headed lawyerly fashion.

The problem for this court in this case is to determine whether tortious conduct committed more the 50 years ago by a teenager was malicious.

Leading cases addressing § 523(a)(6) malice start with the Supreme Court decision in Kawaauhau v. Geiger, 523 U.S. 57 (1998).

Some pertinent Ninth Circuit cases are: Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 554 (9th Cir. 1991); Carillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002); Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001); Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1105-07 (9th Cir. 2005); Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 711-12 (9th Cir. 2008); Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1207 (9th Cir. 2010).

Littleton is particularly pertinent. The court, as trier fact, is entitled to consider the nature of a willful act as circumstantial evidence probative of malice, but it is not required to conclude that circumstantial evidence of the nature of the act, without more, is sufficient to carry the plaintiff's burden of persuasion regarding § 523(a)(6) malice.

The Plaintiff argues that every child sexual molestation is per se excepted from discharge under § 523(a)(6), invoking the tort concept of res ipsa loquitur. No matter how sympathetic one

1 may be to the Plaintiff, § 523(a)(6) requires a hard-headed,
2 lawyerly analysis of malice in the context of relevant facts
3 pertinent to when the tort was committed. Res ipsa loquitur is
4 not a substitute for an actual determination. The unreported case
5 Plaintiff cites from the Central District of California was a
6 case in which the bankruptcy court concluded from circumstantial
7 evidence that malice was present, which finding would be reviewed
8 on appeal for clear error.

IV

<u>Bankruptcy Court Power Regarding Non-Bankruptcy Judgments</u>

The Plaintiff emphasizes that none of the damages awarded were punitive damages and urges that the $47 million judgment must be accepted at face value and adds that the so-called <u>Rooker-Feldman</u> doctrine prevents a federal court from hearing appeals by disappointed litigants from state courts.

A

It is correct that this bankruptcy court has no authority to alter the $47 million judgment. In its post-trial ruling, this court noted that there was no evidence the trial judge decided post-trial motions typical of a case in which there is a very large verdict.

In this court's findings it stated it was literally "on the fence" regarding proof of malice and suggested that a compromise in the nature of an agreed remittitur might sway its sense that the large judgment against an impecunious individual, be it punitive or otherwise, might offend some underlying notions of

6

justice. As the parties declined the invitation, this court ruled that § 523(a)(6) malice was not proved by preponderance of evidence. Accordingly, the issue is dead. The $47 million judgment stands.

Nevertheless, non-economic loss awards totaling $46,650,000.00 against an impecunious defendant from a jury that had not been instructed about punitive damages, malice, and Defendant's financial resources logically suggests punitive animus in the jury. In short, this court's doubts about constitutionality stand.

In the end, however, the distinction between punitive and actual damages is of little moment. As a matter of basic bankruptcy law, actual and punitive damages receive equal dignity except in matters of distribution or subordination under § 510 and § 726.

B

Bankruptcy courts have the power to issue partial discharges of judgment debt. Saxman v. Educational Credit Mgmt. Corp., 325 F.3d 1168 (9th Cir. 2003).

The rationale is that bankruptcy courts are courts of equity empowered to take action short of total discharge so long as such action is consistent with the Bankruptcy Code. Securities & Exchange Comm'n v. United States Realty & Improvement Co., 310 U.S. 434, 455 (1940); Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby), 144 F.3d 433, 439 (6th Cir. 1998).

The Ninth Circuit agrees with the Sixth Circuit's Hornsby rationale. Saxman, 325 F.3d at 1173 ("We continue to find Hornsby

to be the better reasoned opinion, and conclude that bankruptcy courts may exercise their equitable authority under 11 U.S.C. § 105(a) to partially discharge [nondischargeable debt].")

Likewise, the bankruptcy court has the power to enter its own money judgment notwithstanding the prior entry by a state court of a money judgment. Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 869-70 (9th Cir. 2005).

The Sasson court explained: "The fact that a debt has been previously liquidated to judgment does not deprive the bankruptcy court of jurisdiction, nor of any of its statutory or equitable power. The existence of a state court judgment does not deprive the bankruptcy court of the statutory power ... to enter a new judgment of nondischargeability." Sasson, 424 F.3d at 870.

In short, this bankruptcy court has the power to except from discharge all or part of the $47,000,700.00 judgment.

V

Rooker-Feldman Doctrine

The Plaintiff's invocation of the Rooker-Feldman doctrine is unavailing.

Sasson holds that the Rooker-Feldman doctrine does "not deprive the bankruptcy court of jurisdiction to enter a money judgment in the nondischargeability adversary proceeding." 424 F.3d at 871.

The bankruptcy court has exclusive statutory authority to determine whether a debt is dischargeable in a bankruptcy case. Sasson, 424 F.3d at 871.

The application of the Rooker-Feldman doctrine in bankruptcy

is limited by the separate jurisdictional statutes that govern federal bankruptcy law. <u>Gruntz v. County of Los Angeles (In re Gruntz)</u>, 202 F.3d 1074, 1079 (9th Cir. 2000)(en banc).

The Ninth Circuit's explanation in <u>Sasson</u> of the procedural posture squarely applies in this instance:

> The <u>Rooker-Feldman</u> doctrine has no application here. [The debtor] is not seeking to have the bankruptcy court review the merits of the state court judgment; rather, he is attempting to prevent the bankruptcy court from giving effect to the state court judgment. Likewise, the creditor is not seeking modification of the state court judgment; it is attempting to save the judgment from bankruptcy discharge.

<u>Sasson</u>, 424 F.3d at 871.

In short, the <u>Rooker-Feldman</u> doctrine is of no moment here.

## Conclusion

The presentation of a more robust record of what happened in state court arguably could persuade this trier of fact to alter its conclusion that § 523(a)(6) malice was not proved by preponderance of evidence at trial of the adversary proceeding.

The parties will need in future proceedings to address the issues addressed in this Memorandum Decision, including a demonstration why the financial circumstances of the apparently-impecunious debtor do not make this bankruptcy litigation functionally moot.

IT IS ORDERED, Plaintiff's Motion for New Trial is granted in part. A Status Conference regarding scheduling of future proceedings will be held January 28, 2026, at 1:30 p.m.

Dated: November 05, 2025

_____
United States Bankruptcy Judge

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Gabrielle Albert
Keller Benvenutti Kim LLP
101 Montgomery Street
Suite 1950
San Francsico, CA 94104

William T. McLaughlin
5200 N. Palm Avenue, Suite 401
Fresno, CA 93704

William T. McLaughlin
770 L Street, Suite 950
Sacramento, CA 95814